**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF KENTUCKY**
**SOUTHERN DIVISION**
**AT LONDON**

**CIVIL ACTION NO. 20-60-DLB**

**SCOTT MICHAEL PATRICK**                                                              **PETITIONER**

**v.**                            **MEMORANDUM OPINION and ORDER**

**C. GOMEZ, Warden**                                                                   **RESPONDENT**

\*\*\* \*\*\* \*\*\* \*\*\*

Petitioner Scott Patrick has filed a pro se Petition for a Writ of Habeas Corpus pursuant to 28 U.S.C. § 2241. (Doc. # 1). The Court conducts an initial review of the Petition. 28 U.S.C. § 2243; *Alexander v. N. Bureau of Prisons*, 419 F. App'x 544, 545 (6th Cir. 2011).

A petition will be denied "[i]f it plainly appears from the petition and any attached exhibits that the petitioner is not entitled to relief." RULES GOVERNING § 2254 CASES IN THE UNITED STATES DISTRICT COURTS RULE 4 (applicable to § 2241 petitions pursuant to Rule 1(b)). The Court evaluates Patrick's Petition under a more lenient standard because he is not represented by an attorney. *See Erickson v. Pardus*, 551 U.S. 89, 94 (2007); *Franklin v. Rose*, 765 F.2d 82, 84-85 (6th Cir. 1985) (noting that "allegations of a pro se habeas petition, 'though vague and conclusory, are entitled to a liberal construction'" including "active interpretation" toward encompassing "any allegation stating federal relief.") (citations and internal quotation marks omitted).

As an initial matter, Patrick identifies himself as "Patrick Michael Scott" in his Petition, (Doc. # 1 at 1), but his actual name is Scott Michael Patrick. That is how the Bureau of Prisons identifies him in its online Inmate Locator database, and there is no currently-incarcerated federal prisoner named Patrick Scott. *See* https://www.bop.gov/inmateloc/) (last visited April 27, 2020). Petitioner's identity is confirmed by review of his prior federal criminal proceedings. *See infra*. The Clerk of the Court will be directed to correct the docket to reflect the Petitioner's actual name.

In November 1990, Patrick was charged with bank robbery. *United States v. Patrick*, No. 3:90-CR-363-PA-1 (D. Or. 1990) (Doc. # 1 therein). He agreed to plead guilty and was sentenced to 77 months imprisonment to be followed by three years of supervised release. *Id*. (Doc. # 15 therein). Patrick completed that prison term but was again charged with another bank robbery in June 1998. *United States v. Patrick*, No. 6:98-CR-60099-MC-1 (D. Or. 1998) (Doc. # 1 therein). Patrick was convicted of that offense in January 2000 and was sentenced to 210 months imprisonment to be followed by three years of supervised release. *Id*. (Docs. # 80 and 89 therein). That offense also resulted in a consecutive 24-month term of imprisonment for violating the terms of his supervised release in the 1990 case. *See United States v. Patrick*, 54 F. App'x 661, 662 (9th Cir. 2003).

While serving those sentences in a Florida prison, in October 2010, Scott was charged with assaulting another inmate which led to the victim's death. Patrick was convicted of that offense and sentenced to a 100-month term of imprisonment to be served consecutively to his earlier sentences, again followed by a concurrent three-year term of supervised release. *United States v. Patrick*, No. 5:10-CR-36-ACC-PRL-1 (M.D.

Fla. 2010) (Doc. # 137 therein); *see United States v. Patrick*, 630 F. App'x 959, 960 (11th Cir. 2015).

In his Petition, Scott generically contends that in a particular disciplinary proceeding, the Bureau of Prisons ("BOP") lacks the authority to revoke more than the 54 days of good time credit that can be earned in a given year. *See* (Doc. # 1 at 1–4). He further argues that any such revocation would violate the Ex Post Facto Clause if applied to "old law" prisoners.[1] *Id*. at 2, 4. He also contends that the BOP's inmate grievance program is unconstitutional because the BOP cannot grant relief on constitutional grounds or invalidate a regulation. *Id*. at 2–3. Scott offers no argument in support of any of these assertions. Scott also does not identify any particular disciplinary proceeding against him where more than 54 days of good conduct time was revoked. Instead, he asks the Court to order the return of *any* good conduct time that was revoked in excess of that limit for *any* previous disciplinary proceeding since 2008. *Id*. at 4.

Patrick has attached inmate grievance documents to his Petition that indicate that he raised this issue not on appeal from a prior disciplinary conviction, but in 2019 when he sought a retroactive "return of ALL credit taken between 2008 to date that involves EARNED good time credit . . . ." (Doc. # 1-4 at 2). Patrick's grievance to the warden was rejected because he failed to sign it as required by BOP policy, but he was given the

---

[1]  Contrary to Patrick's suggestion, he is not an "old law" inmate. That term refers to federal inmates who committed their offenses prior to the effective date of the Sentencing Reform Act of 1984 ("SRA"), which was enacted as part of the Comprehensive Crime Control Act of 1984. *Cf*. BOP Program Statement 5880.30 (July 1993). Patrick committed his earliest federal offense in 1990. *See Patrick*, No. 3:90-CR-363-PA-1. As explained more fully below, he is arguably only "in custody" as required to invoke this Court's habeas jurisdiction with respect to his 1998 and 2010 federal offenses. *See infra*.

opportunity to correct the error. (Doc. # 1-3 at 2, 3). Instead of rectifying the error, Patrick appealed to the Mid-Atlantic Regional Office. (Doc. # 1-2 at 2, 3). That appeal was in turn rejected because he failed to include a copy of the Disciplinary Hearing Officer ("DHO")'s Report at issue, but he was again given the opportunity to address the omission. *Id*. Instead of doing so, Patrick appealed to the Central Office. (Doc. # 1-1 at 2, 3). That appeal was rejected, both because it was untimely and because his appeal to the regional office was properly rejected. *Id*.

The Court has thoroughly reviewed Patrick's Petition and the materials he has filed in support of it, and will deny the Petition for failure to properly exhaust administrative remedies and because Patrick's claim is substantively without merit.

First, before a prisoner may seek habeas relief under Section 2241, she must first exhaust her administrative remedies within the BOP. *Fazzini v. Ne. Ohio Corr. Ctr.*, 473 F.3d 229, 231 (6th Cir. 2006) (citing *Urbina v. Thoms,* 270 F.3d 292, 295 n. 1; *Little v. Hopkins,* 638 F.2d 953, 953–54 (6th Cir.1981)). Administrative remedies must be exhausted prior to filing suit and in full conformity with the agency's claims processing rules. *Woodford v. Ngo*, 548 U.S. 81, 92–94 (2006).

Any challenge to a disciplinary conviction, including the amount of good conduct time revoked as a result of disciplinary proceedings, must be asserted on appeal from the imposition of disciplinary sanctions. *See* 28 C.F.R. § 541.8(i); BOP Program Statement 5270.09 (Aug. 2011). Unlike ordinary grievances, such appeals are filed initially with the appropriate regional office, not the institution. § 542.14(d)(2). An inmate may raise "any issue related to their incarceration" in an inmate grievance unless specifically governed by an enumerated statute. § 542.10(c); BOP Program Statement 1330.18 (Jan. 2014);

*see also Corr. Servs. Corp. v. Malesko*, 534 U.S. 61, 74 (2001) (noting that inmates may challenge allegedly unconstitutional actions through the inmate grievance process).

Patrick, therefore, was required to raise his challenge to the good conduct time revoked through a direct administrative appeal from the particular disciplinary conviction at issue. *See id*. His attempt to present an omnibus challenge to numerous and unidentified disciplinary sanctions imposed long ago, and to seek retroactive relief for all of them, is therefore procedurally improper. As he failed to follow the BOP's procedures for administratively challenging a disciplinary conviction and the sanctions resulting from it, his claims remain unexhausted. *See Woodford*, 548 U.S. at 92.

Even if Patrick could circumvent the BOP's established procedures for appealing a disciplinary sanction, the administrative grievances he filed in 2019 likewise failed to follow policy. As noted above, each of Patrick's grievances and appeals was rejected on procedural grounds, but he was given the opportunity to correct the error. Instead of doing so, he simply filed an appeal to the next level. This is not permitted under BOP regulations. *See* § 542.17(c) (stating that an inmate may only appeal a rejection of his grievance or appeal if he is not given an opportunity to correct it). His claims are thus unexhausted, and will be dismissed.

Finally, Patrick's conclusory assertion that the BOP's administrative remedy program is itself unconstitutional because it could not afford him the relief he seeks is without merit. The premise for this assertion is itself incorrect: Patrick sought the return of good time credits, a remedy the BOP can plainly provide. However, even if this were not so, the fact that the remedy process may not provide the precise form of relief the

inmate seeks does not excuse the requirement that he exhaust it.  *Porter v. Nussle*, 534 U.S. 516, 524 (2002).

Setting aside Patrick's failure to fully and adequately present his claim to the BOP for consideration in the first instance, it is plainly without merit.  Federal law permits qualifying federal inmates to earn up to 54 days of good conduct time per year for good behavior.  18 U.S.C. § 3624(b).  In its original form effective in 1987, the statute included language stating that "[s]uch credit toward service of sentence vests at the time that it is received.  Credit that has vested may not later be withdrawn . . . ."  § 3624(b) (1988).  Thus, "[u]nder the SRA, good conduct time earned each year is vested at the end of that year and cannot be disallowed in the future.  Sentences imposed between November 1, 1987 to September 12, 1994, are computed under the SRA."  *Vitrano v. Marberry*, No. 06-310 Erie, 2008 WL 471642, at *1 (W.D. Penn. Feb. 19, 2008).

As noted above, however, Patrick's first sentence was imposed in 1990, and he completed service of that sentence prior to 1998.  He was therefore no longer "in custody" pursuant to that sentence when he filed his Petition, and habeas jurisdiction is not available to challenge the sentence or credits affecting its duration.  *See Maleng v. Cook*, 490 U.S. 488, 490–91 (1989) (per curiam).  Even assuming that good time credits were revoked during that period, Patrick may no longer challenge the BOP's actions in that regard.  *See Kokoski v. Small*, Civ. No. 5:07-0145, 2008 WL 3200811, at *3–4 (S.D. W. Va. Aug. 5, 2008).

As for Patrick's 1998 and 2010 sentences, the statutory language quoted above that established the immediate vesting of good conduct time was stricken from § 3584(b) by the Violent Crime Control and Law Enforcement Act of 1994.  In addition, the Prison

6

Litigation Reform Act of 1995 ("PLRA"), applicable to all sentences imposed after April 1996, added two provisions. First, it authorizes the BOP to reduce or eliminate credits for good conduct time if it concludes that the inmate has not "displayed exemplary compliance with institutional disciplinary regulations." § 3624(b)(1). Second, it establishes that credit for good conduct time does not vest until the date the prisoner is released from custody. § 3624(b)(2). Sentences imposed under the PLRA, which include those imposed following Patrick's prosecutions in 1998 and 2010, are aggregated together for purposes of determining credit for good conduct time. *See* BOP Program Statement 5880.28, 1–3 (July 1994). Through these provisions, the PLRA "precludes earlier vesting of good conduct time credits, which was possible under prior law." *Triliegi v. Rios*, No. 1:11-cv-201, 2013 WL 1896186, at *5 (E.D. Cal. May 6, 2013).

Accordingly, courts have rejected the very argument that Patrick presents here—that the BOP is precluded from revoking more than 54 days of good conduct time in a calendar year. *See Sanchez-Alaniz v. Shartle*, No. CV-14-324-TUC-RCC (BGM), 2015 WL 3774432, at *11 (D. Az. June 17, 2015) ("Petitioner's contention that there is a fifty-four (54) day annual 'limit' on the amount of GCT [good time credit] that an inmate may be disallowed is incorrect."); *Brown v. McGrew*, No. EDCV 12-1479-SVW (JPR), 2013 WL 6512948, at *4–5 (C.D. Cal. Dec. 12, 2013) ("[U]nder the PLRA, all of a prisoner's cumulative good-conduct time can be taken by the BOP as a sanction for a prison disciplinary action." "[T]hus the DHO can sanction a prisoner either by forfeiting good-conduct time that the prisoner has already earned or prospectively disallowing good-conduct time that the prisoner has not yet earned."); *Gary v. Fed. Bureau of Prisons*, No. 1:09-CV-2161-DLB (HC), 2010 WL 1611020, at *8 (E.D. Cal. Apr. 21, 2010) ("[S]ince

7

GCT for PLRA inmates does not vest at the end of the year it is awarded, it is now subject to be taken by BOP as a sanction for a prison disciplinary action.").

Application of this rule to Patrick does not present ex post facto concerns under the circumstances present here because the BOP did not retroactively apply a new law to old conduct. Article I of the United States Constitution prohibits the federal government from passing ex post facto laws. U.S. CONST. ART. I, § 9, cl. 3. The type of laws that are prohibited is well established:

> It is settled, by decisions of this court so well known that their citation may be dispensed with, that any statute which punishes as a crime an act previously committed, which was innocent when done, which makes more burdensome the punishment for a crime, after its commission, or which deprives one charged with crime of any defense available according to law at the time when the act was committed, is prohibited as ex post facto.

*Beazell v. Ohio*, 269 U.S. 167, 169 (1925); *see also Cal. Dep't of Corr. v. Morales*, 514 U.S. 499, 504 (1995) (quoting *Collins v. Youngblood*, 497 U.S. 37, 43 (1990)) (holding that the clause prohibits laws that "retroactively alter the definition of crimes or increase the punishment for criminal acts.").

The calculation of sentencing credits is a criminal matter subject to ex post facto limitations. *See Lynce v. Mathis*, 519 U.S. 433, 445 (1997) ("[R]etroactive alteration of parole or early release provisions, like the retroactive application of provisions that govern initial sentencing, implicates the *Ex Post Facto* Clause because such credits are 'one determinant of petitioner's prison term . . . and . . . [the petitioner's] effective sentence is altered once this determinant is changed.'") (quoting *Weaver v. Graham*, 450 U.S. 24, 32 (1981)) (alterations in original). Here, however, the BOP merely applied § 3624(b) as amended in 1996 to Patrick's sentences imposed in 2000 and 2010. No ex post facto

violation has occurred where the applicable statutory language was changed before, not after, it was applied to the petitioner. Accordingly, Patrick's Petition will be denied.

Accordingly, **IT IS ORDERED** as follows:

(1) The Clerk of the Court is directed to correct the Petitioner's name in the docket to Scott Michael Patrick;

(2) Petitioner Patrick's Petition for a Writ of Habeas Corpus pursuant to 28 U.S.C. § 2241 (Doc. # 1) is **DENIED**;

(3) This action is **DISMISSED** and **STRICKEN** from the Court's docket; and

(4) Judgment shall be entered in favor of the Respondent contemporaneously with this Memorandum Opinion and Order.

This 27th day of April, 2020.

Signed By:
*David L. Bunning*   DB
United States District Judge

J:\DATA\ORDERS\PSO Orders\Patrick 20-60 Memorandum Denying Habeas Petition.docx